Filed 9/14/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re KAREN SIMS, | E069440 |
| on Habeas Corpus. | (Super.Ct.No. BLF003752) |
| | OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. Charles Everett Stafford, Jr., and Richard A. Erwood, Judges. Petition granted.

Michaela R. Dalton for Petitioner.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Respondent.

Defendant and petitioner Karen Sims, a former attorney with serious mental illness of longstanding, was convicted of murdering her husband Henry Sims in 2006 and was sentenced to prison for a term of 50 years to life. After her conviction and sentence were affirmed on direct appeal in 2008, she petitioned for a writ of habeas corpus in the California Supreme Court in 2011, claiming her conviction was invalid because she was incompetent to stand trial. That petition was ultimately denied after an order to show

1

cause (OSC) had been issued, returnable in the Riverside County Superior Court. In 2016, she filed another petition for writ of habeas corpus in the Supreme Court on the same ground, with additional information about her postconviction mental health problems as they related to timeliness. The California Supreme Court again issued an OSC returnable to this court. We grant the petition.

## BACKGROUND[1]

Defendant has a history of mental illness that includes at least one prior hospitalization lasting two years and had manifested itself in violent knife assaults against her husband and her daughter while the family lived in Colorado. After being released from an extended psychiatric hospitalization in Colorado, the family moved to California where defendant practiced immigration law. (*People v. Sims*, *supra*, E042064.)

In 2005, when defendant's daughter was home from medical school for the summer, defendant was behaving combatively and secretively, refusing to take her medication. She was suspicious of conspiracies, convinced that she was God's daughter fighting demons, or the daughter of an alien fighting some sort of intergalactic war on earth. She accused her husband of adultery, occult practices, and devil worship. Defendant also accused her husband of carrying on with prostitutes and drugging her at night. She also behaved erratically with her office staff and clients, and sometimes missed court appearances. (*People v. Sims*, *supra*, E042064.)

---

[1] Portions of the background are taken from this court's opinion in the direct appeal. (*People v. Sims* (Nov. 17, 2008, E042064) [nonpub. opn.].)

2

Things came to a head in September 2005, when there was an incident at Lake Evans in Riverside. After the incident, defendant and her husband drove to Blythe, where defendant shot her husband several times, killing him. (*People v. Sims*, *supra*, E042064.) A complaint was filed, charging defendant with murder and two firearm enhancements. (Pen. Code, §§ 187, subd. (a); 12022.5, subd. (a); 12022.53, subd. (d).)

On September 29, 2005, the trial court appointed a medical examiner, Dr. Kania, to evaluate defendant, based upon her first appointed counsel declaring a doubt as to her competence. The evaluation, dated November 29, 2005, concluded that defendant was delusional and suffering from either schizoaffective or bipolar disorder, but that she was able to understand the nature of the proceedings and was able to cooperate with the examiner in a rational manner.

Dr. Kania noted that defendant did not trust her attorney based on her belief that counsel thought she was "crazy," which could interfere with her willingness to cooperate with counsel but volunteered that it might not affect her ability to cooperate with another attorney. He concluded she was competent to stand trial but cautioned that her condition could deteriorate if she continued to decline medication. The trial court found defendant competent to stand trial. (*People v. Sims*, *supra*, E042064.)

In May 2006, defendant retained attorney Michael DeFrank to represent her. On or about August 9, 2006, defendant made a motion to represent herself pursuant to *Faretta v. California* (1975) 422 U.S. 806 because she objected to her attorney's in limine motion to exclude her statements to police  The motion, styled as a motion to

3

exclude her confession, was objectionable to defendant because, while defendant admitted she discussed shooting her husband with investigators, she denied it was a "confession." (*People v. Sims*, *supra*, E042064.)

Thereafter, Mr. DeFrank was designated advisory counsel, and defendant withdrew in limine motions to exclude defendant's confession and opposing admission of prior similar acts pursuant to Evidence Code, section 1101, subdivision (b). The two prior acts related to a 1992 butcher knife attack on her husband and a 1995 incident in which defendant stabbed her daughter while having delusions about the "Second Coming," explaining she had to stab her daughter to insure the daughter would go to heaven immediately and not suffer. (*People v. Sims*, *supra*, E042064.)

Defendant made bizarre statements during the hearing on her request to represent herself and during trial.[2] In her opening statement, she talked about the Greek word for devil, the biblical story of Jezebel, and described her 25 years of marriage as "very colorful" and "a lot of joy." She denied killing her husband, asserted that he was alive when the coroner's photographs were taken, and proposed he was beaten and murdered by someone else while defendant was in custody. She cross-examined the pathologist about his experience with "[s]atanic ritual killings" and torture. Alternatively, she accused her husband of leading a double life, like Dr. Jekyll and Mr. Hyde, and claimed he was killed by friends and associates he had known for 15 years. Defendant's children

---

[2] The record is replete with bizarre statements by defendant. The fact we limit the number of her delusional statements here is not intended as a comment on the significance or relevance of other statements.

4

testified that defendant became suspicious and delusional when not taking her medication. (*People v. Sims*, *supra*, E042064.)

According to his declaration, Mr. DeFrank noticed that defendant's mental illness had been exacerbated by the stress of trial, and he attempted to inform the court on two separate occasions that he had a doubt as to her competence, but the court would not allow him to speak because he was advisory counsel, only. On August 24, 2006, defendant accused Mr. DeFrank of conspiring with the deputy district attorney and relieved him of further advisory position.

On August 28, 2006, defendant was found guilty of the murder of her husband (Pen. Code, § 187, subd. (a)), and the jury made true findings on the gun discharge and gun use allegations (§§ 12022.5, subd. (a), 12022.53, subd. (d)). The following day, on August 29, 2006, in a case that had been trailing the murder charges, Mr. DeFrank, who represented defendant in the trailing matter, declared a doubt as to defendant's mental condition. Judge Erwood suspended proceedings in that case. On October 25, 2006, Judge Erwood found defendant to be competent to stand trial in the trailing case, but defense counsel requested a trial on the issue, and that request was granted. On January 5, 2007, the People moved to dismiss the charges in the trailing case, before the competency trial was conducted.

Defendant appealed her murder conviction, raising evidentiary, instructional, and sentencing errors. At our request, the parties filed supplemental briefs on the issue of whether defendant was competent to represent herself pursuant to *Indiana v. Edwards*

5

(2008) 554 U.S. 164. On November 17, 2008, we affirmed in full. On February 25, 2009, the Supreme Court denied review.

On April 12, 2010, defendant filed her first petition for writ of habeas corpus in the California Supreme Court, in propria persona. (*In re Sims*, S181881.) Her petition was accompanied by the declaration of her advisory counsel and a copy of Dr. Kania's evaluation conducted in November 2005. On September 14, 2011, the Supreme Court issued an OSC, returnable to the Riverside Superior Court. The People filed a Return in the superior court on March 7, 2012, arguing that the petition was untimely, that the issue of defendant's competence to stand trial had been raised in the direct appeal, and there was substantial evidence to support the trial court's finding defendant was competent. The superior court denied the petition.

On September 14, 2016, defendant filed her second petition for writ of habeas corpus in the California Supreme Court. After soliciting an informal response from the People, the Supreme Court issued an OSC why relief should not be granted, made returnable in this Court.

## DISCUSSION

Defendant does not challenge the November 2005 finding by the trial court that defendant was competent to stand trial, following the initial Penal Code section 1368 evaluation. We, therefore do not address the correctness of the initial finding of competence, despite the fact Dr. Kania's opinion was not based on defendant's ability to cooperate with her counsel or her ability to conduct a rational defense. Instead, she

6

argues that the trial court erred in not conducting further proceedings pursuant to Penal Code sections 1367 et seq., between August and December 2006, in the course of defendant's *Faretta* motion, her self-representation at trial, and the sentencing proceedings.

The People's return incorporates a declaration by defendant's advisory counsel, explaining his thwarted attempts to apprise the trial court of defendant's deteriorated mental state in an effort to have her competence re-evaluated.  While we addressed a small slice of this issue on direct appeal, limited to her competence to represent herself, we did not address whether defendant's circumstances had changed after the court granted her *Faretta* motion, such that proceedings should have been suspended for further evaluation.

### a.  *Principles Governing Habeas Corpus Review*

Where a reviewing court finds the factual allegations of a habeas petition, taken as true, establish a prima facie case for relief, the court will issue an OSC.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*), citing *In re Clark* (1993) 5 Cal.4th 750, 781, fn. 16 & *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4.)  When an OSC does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition.  It directs the respondent to address only those issues.  (*In re Clark*, at p. 781, fn. 16; see *In re Reno* (2012) 55 Cal.4th 428, 458, fn. 15.)  Issuance of an OSC, therefore, indicates the issuing court's preliminary assessment that the petitioner would be entitled to relief if his factual allegations are proved.  (*Duvall*, at p. 475.)  An OSC directing

7

response on a particular issue indicates that the petitioner has failed to make a prima facie case as to the other issues presented.  (*Ibid.*; *People v. Miranda* (1987) 44 Cal.3d 57, 119, fn. 37, citing *In re Hochberg, supra,* 2 Cal.3d at p. 875, fn. 4.)

The issuance of an OSC creates a " 'cause' " giving the People the right to reply to the petition by a return and to otherwise participate in the court's decision-making process.  (*In re Serrano* (1995) 10 Cal.4th 447, 455, citing *People v. Pacini* (1981) 120 Cal.App.3d 877, 884.)  The return must allege facts tending to establish the legality of petitioner's detention.  (*Duvall*, *supra*, 9 Cal.4th at p. 476, citing *In re Sixto* (1989) 48 Cal.3d 1247, 1252.)  It is the interplay between the return and the petitioner's traverse that frames the issues the court must decide.  (*In re Serrano*, at p. 455.)

Once the issues have been joined in that way, the court must determine whether an evidentiary hearing is needed.  (*In re Serrano*, *supra*, 10 Cal.4th at p. 455.)  If the return admits the allegations in the petition that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing.  (*Ibid.*)  If the return and traverse reveal that whether petitioner is entitled to relief hinges on the resolution of factual disputes, the court should order an evidentiary hearing.  (*People v. Romero* (1994) 8 Cal.4th 728, 739-740.)  If the return effectively admits the material factual allegations of the petition and traverse by not disputing them, we may resolve the issue without ordering an evidentiary hearing.  (*In re Sixto*, *supra*, 48 Cal.3d at p. 1252; see *People v. Frierson* (1979) 25 Cal.3d 142, 160.)

In this case, most of the facts are undisputed, save the matters set forth in the declaration of defendant's advisory counsel. We turn, therefore, to the legal principles underlying defendant's contention, limiting our review to the issue of defendant's competence to stand trial between August and December 2006.

b. *Untimeliness*

Defendant's trial concluded and she was sentenced in December 2006. Her direct appeal concluded with the issuance of our unpublished opinion in 2008. Her first habeas petition was not brought until three years later, in 2011, and it was decided in 2012. The instant petition was not filed until September 2016, four years later. The People contend it is untimely.

A criminal defendant mounting a collateral attack on a final judgment of conviction must do so in a timely manner. (*In re Reno*, *supra*, 55 Cal.4th at p. 459.) Thus, a petitioner is required to explain and justify any significant delay in seeking habeas corpus relief. (*In re Clark*, *supra*, 5 Cal.4th at p. 765.) An unjustified delay in presenting a claim bars consideration of the merits. (*In re Reno*, at p. 452; *In re Clark*, at p. 759.)

To avoid a laches bar, the petitioner must demonstrate good cause of the delay, unless it falls under one of four narrow exceptions: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (3) that the

9

death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a death sentence; or (4) that the petitioner was convicted or sentenced under an invalid statute. (*In re Robbins* (1998) 18 Cal.4th 770, 780-781.)

The petitioner has the burden of establishing the absence of "substantial delay," which is measured from the time the petitioner or counsel knew, or reasonably should have known of the information offered in support of the claim and the legal basis for the claim. (*In re Robbins*, *supra*, 18 Cal.4th at p. 787.)

Defendant argues that this court must entertain the petition on the merits because it falls within a recognized exception to delayed filings, that is, a fundamental miscarriage of justice, citing *In re Clark*, *supra*, 5 Cal.4th 750. There, the Supreme Court stated in its conclusion that "the general rule is still that, absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied. The only exception to this rule are petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." (*Id.* at p. 797.)

Defendant also focuses a great deal of attention to the fact that she was the subject of involuntary medication proceedings between June 2013 and May 2015, citing *People v. Kelly* (1992) 1 Cal.4th 495, 546, as support for the proposition that a defendant's

10

alleged incompetency could be grounds for permitting the untimely raising of an issue. However, the order granting the petition for administration of involuntary medication was not based on defendant's lack of capacity to consent. Instead, pursuant to Penal Code section 2602, the Department of Corrections and Rehabilitation sought the order on the ground she is a danger to self or others, among other criteria. There was no showing of incompetence during that period, although there was a showing she lacked access to resources to follow up on her petition.

Nevertheless, based on the declaration of defendant's advisory counsel that his attempts to seek a further competency evaluation of defendant were thwarted by the trial court, which were not adjudicated in an evidentiary hearing in the superior court, there may have been a fundamental miscarriage of justice. The petition is based on matters outside the record (Mr. DeFrank's declaration) that were not explored in an evidentiary hearing in the superior court in the previous habeas proceedings, so it could not have been presented on direct appeal. Thus, while untimely, we will address the merits.

c. *Repetitious Claims*

The People argue that defendant's claim is barred because it could have been but was not presented on direct appeal, and is therefore barred under *In re Dixon* (1953) 41 Cal.2d 756. To the extent the issue regarding defendant's competence to represent herself on direct appeal overlaps the issue posited in the most recent petition, the People also argue the petition is barred as successive or duplicative under *In re Waltreus* (1965) 62 Cal.2d 218. Defendant claims the current petition is grounded in the trial court's

11

failure to suspend proceedings for further competency evaluation between August and December 2006, and is not duplicative of the issue decided in the direct appeal.

Habeas corpus cannot serve as a substitute for an appeal (*In re Dixon*, *supra*, 41 Cal.2d at p. 759) or as a second appeal (*In re Waltreus*, *supra*, 62 Cal.2d at p. 225, citing *In re Winchester* (1960) 53 Cal.2d 528, 532). A claim that is duplicative of a claim raised in a previous habeas petition is also subject to dismissal, absent a change in the facts or the law. (*In re Reno*, *supra*, 55 Cal.4th at pp. 459-460; *In re Clark*, *supra*, 5 Cal.4th at pp. 769-770.)

The issue of whether defendant was competent to represent herself at trial was addressed on direct appeal, and the Supreme Court denied review of that decision on March 6, 2009. We decline to review that question again. The first petition raised a different question, that is, whether the court should have ordered further evaluation of defendant's competence after defendant's motion to represent herself had been granted. The Supreme Court issued an OSC, returnable in the superior court, which should have conducted an evidentiary hearing at which Mr. DeFrank could explain his attempts to communicate his concerns to the trial judge. However, the superior court summarily denied the petition without an evidentiary hearing.

The current petition raises this issue anew, but includes information explaining the delay and to clarify that the petition is not duplicative of the issue raised on appeal. It argues her conviction must be vacated because she was incompetent to stand trial between August 2006 and December 2006, due to a deterioration of her mental status. In

12

other words, it argues that after defendant's *Faretta* motion was granted, her mental condition deteriorated to the point that further competency proceedings were required. This issue is not barred by our review of her competence as of the time the trial court granted her *Faretta* motion on direct appeal. It was also not determined on the merits in the prior habeas proceeding, despite the fact the Supreme Court made it a cause. We therefore consider the merits.

d. *Merits of the Petition Regarding Defendant's Incompetence to Stand Trial After Her Request to Represent Herself Was Granted.*

The critical question posed in the petition—the question which no doubt caused our Supreme Court to twice issue an OSC—is whether the trial court erred in not suspending proceedings for further examination of defendant's competence to stand trial, based on her decompensated mental condition. This issue is not barred by our prior appeal, because it grounded on information outside the appellate record (the declaration of Mr. DeFrank) relating to events that occurred after the court granted defendant's *Faretta* motion.

In reviewing this issue, the most significant facts are contained in the declaration of defendant's then advisory counsel, which, if found true, recount two attempts to express a doubt as to defendant's competence. Although the People argue that the record does not reflect any efforts of Mr. DeFrank to inform the court of his doubt as to defendant's competence, that is the problem: the declaration states he was not permitted to address the court. This is a disputed fact that requires an evidentiary hearing.

13

We cannot consider the documents relating to defendant's mental health based on jail records during the trial period; they do not establish defendant's incompetence to stand trial, and there is no indication the trial court was aware of these facts. We also do not consider the documents relating to her mental health treatment after she was transferred to prison, because they are not relevant to the question of whether she was competent to stand trial.

However, the facts set out in the declaration of advisory counsel are, if found true, relevant to the issue of defendant's competence during the trial, and reflect information that the court failed or refused to hear or consider during the trial. The trial court similarly failed to act on the information after the Supreme Court issued its original OSC, which was made returnable to the superior court, where the superior court summarily denied that petition. Had the superior court conducted an evidentiary hearing, counsel could have presented the testimony of Mr. DeFrank, as well as expert testimony, at a time when memories were fresher. This would have saved substantial judicial resources and insured a more meaningful resolution of the issue.

A person cannot be tried or adjudged to punishment or have his or her probation, mandatory supervision, postrelease community supervision, or parole revoked while that person is mentally incompetent. (Pen. Code, § 1367, subd. (a).) A defendant is competent to stand trial if he or she is able to understand the nature of the proceedings taken against him or her and to assist counsel in the conduct of a defense in a rational manner. (*Ibid.*) Where the defendant is representing himself or herself, the standard of

14

competence is the same: whether the defendant " 'is able to understand the nature and purpose of the proceedings taken against him and to conduct his *own defense in a rational manner*.' " (*People v. Murdoch* (2011) 194 Cal.App.4th 230, 239.)

" ' "Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent." ' " (*People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 236, citing *People v. Lewis* (2008) 43 Cal.4th 415, 524.)

A trial judge is required to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning defendant's competence to stand trial. (*People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 236.) The court's duty may arise at any time prior to judgment. (*Ibid.*) Penal Code section 1368 provides that if a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt on the record and inquire of the attorney for the defendant whether counsel believes defendant is mentally competent. (Pen. Code, § 1368, subd. (a).) The section goes on to provide that if defendant is not represented by counsel, the court shall appoint counsel. (*Ibid.*) Failure to appoint counsel when the court declares a doubt regarding a self-represented defendant's competence is error. (*People v. Lightsey* (2012) 54 Cal.4th 668, 691-692.)

" 'Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.' " (*People v.*

15

*Murdoch*, *supra*, 194 Cal.App.4th at p. 236; see *People v. Rogers* (2006) 39 Cal.4th 826, 847.)  But to be entitled to a competency hearing, a defendant must exhibit more than a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist defense counsel.  (*People v. Murdoch*, at p. 236, citing *People v. Rogers*, at p. 847.)  The statutory scheme does not require that the evidence of incompetence be presented to the court by means of any particular individual or through any particular channel.  Thus, advisory counsel should be permitted to declare a doubt as to his or her client's competence.  (See *People v. Lightsey*, *supra*, 54 Cal.4th at p. 693 [advisory counsel made motion that gave rise to the competency proceedings].)

We agree that evidence of mental illness alone is insufficient to raise a doubt as to competency.  (*People v. Rogers*, *supra*, 39 Cal.4th at p. 849.)  Bizarre statements or actions, taken in isolation, do not require a court to hold a competency hearing.  (*People v. Murdoch*, *supra*, 194 Cal.App.4th at pp. 236-237; see *People v. Kroeger* (1964) 61 Cal.2d 236, 243-244 [bizarre actions]; *People v. Williams* (1965) 235 Cal.App.2d 389, 398 [bizarre statements].)  However, it would be error to refuse to allow advisory counsel to make a motion or declare a doubt, in order to make additional information about the defendant's current mental competence available to the court.

Further, once a defendant has been found competent to stand trial, a second competency hearing is required only if the evidence discloses a substantial change of circumstances or new evidence is presented casting serious doubt on the validity of the prior finding of defendant's competence.  (*People v. Leonard* (2007) 40 Cal.4th 1370,

16

1415, citing *People v. Medina* (1995) 11 Cal.4th 694, 734.) Due process requires a competency hearing only if the court is presented with substantial evidence of incompetence. (*People v. Garcia* (2008) 159 Cal.App.4th 163, 170, citing *People v. Lawley* (2002) 27 Cal.4th 102, 136.)

In *Murdoch*, the court concluded the trial court was required to institute competency proceedings, but cautioned that it was not based solely upon the bizarre statements or actions taken in isolation. (*Murdoch*, *supra*, 194 Cal.App.4th at p. 238.) Instead, the reviewing court based its decision on " 'all the relevant facts in the record.' " (*Ibid.*) That record included evidence of defendant's long history of severe mental illness and the court's knowledge of the fact that defendant had discontinued his medication, which would make him decompensate. (*Id.* at p. 238.)

The People argue that the trial court did not express a doubt as to defendant's competence, thereby negating the need for a competency evaluation. Although it is true the trial judge did not express a belief that defendant's mental health had deteriorated to the point of incompetence, the judge was aware of defendant's long history of severe mental illness, the fact she was not compliant with her medication, and that Dr. Kania had predicted this would make her decompensate. Additionally, the court was confronted with objectively observable evidence of defendant's bizarre legal defense, and heard her statements in open court. Even to a casual observer, the manner in which defendant conducted her defense was not rational.

17

Because Penal Code section 1367, subdivision (a), requires that a defendant be able to assist counsel or conduct her own defense "in a rational manner," these additional circumstances required the appointment of counsel and/or the declaration of a doubt as to defendant's competence.

No published cases have been found addressing the issue of a trial court's refusal to receive the information from advisory counsel during the trial, but if the declaration could have been substantiated by testimony at an evidentiary hearing, this was, itself, error. We recognize that a pro se defendant has control of the organization and content of his or her own defense, and that the particular duties of advisory counsel lie within the discretion of the court and under the direction of client. (*People v. Doane* (1988) 200 Cal.App.3d 852, 860-862.) Unless advisory counsel is intended to perform the duties of a potted plant, the court should permit advisory counsel to speak to certain issues. (See *People v. Lightsey*, *supra*, 54 Cal.4th at p. 692.) We acknowledge the reluctance of a court to suspend proceedings midtrial, but a court cannot blind itself to a defendant's changed mental health circumstances by refusing to hear from advisory counsel where the objectively observable evidence demonstrates the defendant is not capable of conducting a rational defense.

The court was directly aware of defendant's history of noncompliance with her medication, and that her condition deteriorated on those occasions. The court was warned by Dr. Kania, in the 2005 competency evaluation, that defendant was not taking

her medication and that she would likely become incompetent.[3] Dr. Kania expressed the opinion that she did not "possess the mental competence to make rational decisions with regard to anti-psychotic medication, given that she has recently discontinued taking this prescribed medication in the jail."

The court was also aware that immediately after it granted her *Faretta* motion, defendant withdrew a motion to exclude her statements to investigators in which she admitted killing her husband, because she did not consider that to be a "confession." The court also heard multiple bizarre statements made by defendant in open court and on the record; it heard her bizarre defense theories, including that her husband was not dead, that he was killed by the police, killed by friends and associates he had known for 15 years, or that he was murdered by unknown third parties after defendant was arrested. These facts, and others too numerous to list, should have caused a reasonable judge to question whether the defendant was able to " 'conduct [her] own defense in a rational manner.' " (*People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 239, italics omitted.)

In the usual case, where the defendant is represented by counsel, an attorney can inform the court if he or she entertains a doubt as to a defendant's current competence and gather evidence to present to the court. When the defendant represents him- or herself, there is no defense counsel to either alert the court to a change of circumstance,

---

[3] Strangely, Dr. Kania's report also noted that defendant refused to cooperate with her counsel because counsel thought defendant was crazy, but the evaluator concluded she might cooperate with a different attorney. This suggests that the evaluator concluded defendant was competent based on speculation and an incorrect standard.

19

or answer the court's concerns where the court expresses a doubt as to competence. (*People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 238.) The standard of competence is not limited to whether defendant understands the nature and purpose of the proceedings; the court must also determine whether he or she can conduct his or her own defense in a rational manner. (*Id.* at p. 239.) Advisory counsel must be authorized to express such a doubt in order to prevent a violation of the defendant's due process rights.

In this case, there was objective evidence, on the record, showing defendant was not competent to conduct "a rational defense." If it is true that counsel attempted to communicate his concerns to the court, this would constitute evidence of changed circumstances that should have compelled the suspension of proceedings pursuant to Penal Code section 1367 et seq. to evaluate defendant's competence. An evidentiary hearing is necessary to inquire, on the record, about counsel's attempts to relay his concerns to the trial court.

We grant the petition and remand the matter to the superior court to conduct an evidentiary hearing at which counsel shall be appointed to represent defendant. There, counsel should present the testimony of Mr. DeFrank, as well as any expert witnesses or mental health professionals who were aware of defendant's mental health condition during the period between August and December 2006, or such other evidence as may constitute substantial evidence of defendant's incompetence to stand trial.

**DISPOSITION**

The petition is granted. The matter is remanded to the superior court to appoint counsel for defendant and hold an evidentiary hearing on whether there is substantial evidence of defendant's incompetence to stand trial between August and December 2006.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:

MILLER
J.

SLOUGH
J.

21