Filed 3/13/24  In re Timberlake CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re<br><br>PAUL E. TIMBERLAKE,<br><br>On Habeas Corpus. | F085601<br><br>(Kern Super. Ct. No. BF158240A)<br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.

Fay Arfa for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Respondent.

-ooOoo-

In 2016, after he shot and killed a gang rival, petitioner Paul E. Timberlake was convicted by a jury of second degree murder, felon in possession of a firearm, carrying a loaded weapon while being an active member of a criminal street gang, and actively participating in a criminal street gang.  The jury also found true a gang enhancement allegation as to the felon in possession count, among other allegations.

In his first direct appeal, we upheld his convictions but remanded this matter for the court to consider striking firearm enhancements under newly enacted legislation.  The

trial court declined to strike the enhancements on remand, and Timberlake appealed from that decision. We affirmed in an opinion issued in January 2022.

In January 2023, Timberlake filed this petition for habeas corpus asserting four claims for relief. First, he contends the amendments to Penal Code section 186.22[1] created by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (AB 333) apply to him and require reversal of the gang enhancement finding and the gang participation conviction. Second, he argues section 186.22 rendered some evidence inadmissible and requires reversal of his murder conviction. Third, as an alternative to his first claim, he asserts the gang enhancement finding and the gang participation conviction must be reversed under *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*). And fourth, he contends his prior appellate counsel provided ineffective assistance by failing to challenge the trial court's admission of rap music videos and lyrics at trial. We issued an order to show cause.

We agree with Timberlake's first claim and will grant the petition as to that claim. The gang enhancement finding and the gang participation conviction must be reversed, but the People may elect to retry them. Since we are granting relief on the first claim, we need not address the third claim since it requests the same relief. We also reject Timberlake's second claim on the merits and reject his fourth claim as untimely.

## BACKGROUND

### I. The crimes

We reproduce the summary of facts of the crimes from our opinion in Timberlake's first direct appeal, *People v. Timberlake* (Aug. 22, 2018, F073543) [nonpub. opn.] 2018 WL 4002008 (*Timberlake I*).

> On the evening of November 7, 2014, Timberlake and his friend, Donnell Robinson, a Country Boy Crip, went to a "fish fry" and to have a couple of drinks at a friend's house. Later, Timberlake and Robinson went

---

[1] Undesignated statutory references are to the Penal Code.

2.

to purchase more alcohol and then headed to Martini's, a bar adjoining a bowling alley in Bakersfield.

At Martini's, Timberlake and Robinson socialized in the parking lot with other members of the Country Boy Crips. Also in the parking lot were members of a rival gang, the Eastside Crips.

Shortly before 10:30 p.m., a red Infiniti, driven by Eastside Crip Lionell McGee, stopped in the parking lot near Robinson's vehicle. Timberlake noticed the red Infiniti and thought it was unusual because it was parked laterally across the front of several parking spaces instead of in the parking space. After McGee got out of the Infiniti, Timberlake approached him from the rear of the car. According to Timberlake, McGee was not smiling and put his hand into his left jacket pocket. Timberlake pulled out a gun and shot McGee three times.

As Timberlake was running back to Robinson's vehicle, he was shot in the back. Robinson drove Timberlake to the hospital for treatment.

Police Officer Jess Beagley and other officers responded to a chaotic scene at Martini's. Fifty to sixty people were milling about in the parking lot and cars were leaving. Officer Beagley found McGee dead on the ground. McGee had entry and exit wounds in the center of his chest, as well as a gunshot wound to the front of his head. Three vehicles in the parking lot, including the red Infiniti, and the wall of a neighboring motel had evident bullet strikes.

Law enforcement obtained a surveillance video depicting the shooting from a camera positioned on the southwest corner of a nearby motel. The video was admitted as People's Exhibit 35 and played for the jury.

Timberlake testified on his own behalf. He admitted shooting McGee, but claimed he did so in self-defense. He threw the gun into a dumpster across the street before going to the hospital to have his own gunshot wounds treated. Timberlake's recorded police interview, in which he denied shooting McGee, was admitted as People's Exhibit 46 and played for the jury.

Timberlake admitted having associated with the Country Boy Crips, admitted being a gang member at the time of his 2007 conviction for drug sales, but testified he dropped out of the gang on his release from prison in 2009. Although he claimed he was no longer a Country Boy Crip when he

3.

shot McGee, he admitted he still carried a gun for protection because of his past association with the gang.

Timberlake acknowledged making the rap videos shown at trial in 2013 and 2014. He also admitted having 100 tattoos, but claimed only five or six were gang related and those were "over ten years old."

## II.     Trial court proceedings

A jury convicted Timberlake of second degree murder (§ 187, subd. (a); count 1), felon in possession of a firearm (§ 29800, subd. (a)(1); count 2), carrying a loaded firearm while an active member of a criminal street gang (§ 25850, subd. (c)(3); count 3), and being an active participant in a criminal street gang (§ 186.22, subd. (a); count 4). The jury found not true as to count 1, but true as to count 2, that the offense was committed for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and it found true, as to all counts, personal firearm use enhancements (§§ 12022.5, subd. (a), 12022.53, subd. (d)). Additionally, in a bifurcated proceeding, the trial court found Timberlake had suffered two prior strike convictions within the meaning of the Three Strikes law (§ 667, subd. (c)–(j)) and two prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served two prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced Timberlake to a total term of 65 years to life as follows: on count 1, 15 years to life, doubled because of the prior strikes, plus 25 years to life for the associated firearm enhancement (§ 12022.53, subd. (d)), plus two five-year terms for the prior serious felony enhancements (§ 667, subd. (a)). The court imposed but stayed life terms on counts 2, 3, and 4 under section 654.

## III.     Postconviction proceedings

In April 2016, Timberlake appealed. He argued that the trial court erroneously admitted gang related testimonial hearsay in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 and that his murder conviction was prejudiced by that inadmissible testimonial hearsay. (*Timberlake I, supra,* 2018 WL 4002008, at p. 1.) In August 2018, this court affirmed Timberlake's convictions but remanded the matter for the trial court to

4.

exercise its discretion under sections 12022.53, subdivision (h), and 12022.5, subdivision (c). (*Timberlake I*, at pp. 1, 10.)

In November 2020, the trial court declined to strike Timberlake's firearm enhancement (§ 12022.53, subd. (d)) or strike his prior serious felony enhancements (§ 667, subd. (a)(1).) On November 24, 2020, Timberlake appealed the trial court's decision. On appeal, appointed counsel raised no issues and requested that this court review the record independently under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). (*People v. Timberlake* (Jan. 6, 2022, F082097) [nonpub. opn.] 2022 WL 55545 at p. 2 (*Timberlake II*).) On January 6, 2022, this court affirmed the judgment after finding no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Timberlake. (*Timberlake II*, at pp. 2–3.)

Before this petition, Timberlake filed six habeas petitions in pro per, some in state court and some in federal court, none of which were successful. He is represented by counsel in this habeas proceeding, and counsel filed the petition on January 24, 2023. We issued an order to show cause on July 3, 2023.

## DISCUSSION

### I. Assembly Bill 333

AB 333 took effect on January 1, 2022. This legislation significantly changed the elements necessary to establish a criminal street gang. It amended the language of section 186.22 to modify the showing necessary to prove gang offenses and gang enhancements (Stats. 2021, ch. 669, §§ 3–4, eff. Jan 1, 2022), and added section 1109 (Stats. 2021, ch. 669, § 5, eff. Jan. 1, 2022), requiring bifurcation of the trial of gang enhancements and substantive gang offenses from that of the underlying offense upon a defendant's request. (§ 1109, subds. (a), (b).)

Timberlake contends he is entitled to the benefit of newly enacted AB 333 because it applies retroactively and argues that none of the predicate crimes used to establish a pattern of criminal activity by the Country Boy Crips gang were properly proven under

5.

revised section 186.22, subdivision (e)(1). The People counter that Timberlake's claim is untimely. They also argue that although AB 333 applies retroactively, it does not apply to Timberlake because his convictions became final before AB 333's enactment. However, the People concede that if this court determines that AB 333 applies to Timberlake, then his gang participation conviction and the finding on the gang enhancement allegation must be reversed.

We first conclude this claim is not untimely. We also conclude AB 333 applies to Timberlake, and we accept the People's concession that the enhancement allegation findings and the participation conviction must be reversed.

## A. Timeliness

We disagree that this claim was untimely.

"A criminal defendant mounting a collateral attack on a final judgment of conviction must do so in a timely manner. [Citation.] Thus, a petitioner is required to explain and justify any significant delay in seeking habeas corpus relief. [Citation.] An unjustified delay in presenting a claim bars consideration of the merits." (*In re Sims* (2018) 27 Cal.App.5th 195, 204 (*Sims*).)

"[T]he *petitioner* has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness. [¶] Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. A petitioner must allege, *with specificity*, facts showing when information offered in support of the claim was obtained, and that the information neither was known, nor reasonably should have been known, at any earlier time." (*In re Robbins* (1998) 18 Cal.4th 770, 780 (*Robbins*).)

AB 333 became effective January 1, 2022, just five days before we filed our opinion in *Timberlake II*. Timberlake's appointed counsel filed a no-issue brief under *Wende, supra,* 25 Cal.3d 436 in that appeal on May 12, 2021. Timberlake could have

6.

filed a request to submit supplemental briefing between January 1, 2022, and the time we filed our opinion on January 6, 2022, to raise any issue about revised section 186.22. He also could have filed a petition for rehearing after we filed the opinion. However, he filed the instant petition just over one year after AB 333's enactment, which we do not find constitutes substantial delay. We thus find this claim is not untimely.

### B. Section 186.22

The jury found true a gang enhancement allegation on count 2 (§ 186.22, subd. (b)). At the time of Timberlake's trial, " 'criminal street gang' " was defined as "any ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f).)

AB 333 also redefined " 'pattern of criminal gang activity' " (§ 186.22, subd. (e)(1)), a requirement to proving the existence of a criminal street gang, and thus a prerequisite to proving the gang crime and the gang enhancement. (See § 186.22, subds. (a), (b)(1); accord, *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823.) " 'The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses.' " (*Rodriguez, supra,* at p. 822.) At the time of Timberlake's trial, " 'pattern of criminal activity' " meant "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons …." (Former § 186.22, subd. (e).) Under this former definition, the prosecution only had to prove that those associated with a gang had committed at least two offenses

7.

from a list of predicate crimes on separate occasions within three years of one another. (*Ibid.*; see *People v. Sek* (2022) 74 Cal.App.5th 657, 665 (*Sek*).) It was unnecessary to prove the predicate offenses were gang related. (Former § 186.22, subd. (e); *Rodriguez, supra,* at p. 822.)

The amended statute made several changes to the definition and limited type of predicate offenses sufficient to prove the gang enhancement. "First, the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons). (§ 186.22, subd. (e)(1).) Second, the predicate offenses must be proven to have '*commonly* benefited a criminal street gang.' (*Ibid.*, italics added.) Third, the last predicate offense must have occurred within three years of the date of the currently charged offense. (*Ibid.*) Fourth, the list of qualifying predicate offenses has been reduced. (*Ibid.*) And fifth, the currently charged offense no longer counts as a predicate offense. (§ 186.22, subd. (e)(2).)" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477–478.) Most notably, the new element that the predicate offenses "commonly benefited a criminal street gang" requires that "the common benefit of the offense is more than reputational …." (§ 186.22, subd. (e)(1).) A new subdivision (g) was also added to section 186.22, specifying that "[e]xamples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

## C.     Retroactivity

Both parties recognize that AB 333 applies retroactively to any criminal matter that is not yet final on appeal. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.) But the People argue that Timberlake's judgment of conviction became final when this court's opinion in *Timberlake I* became final in 2018, which was long before AB 333 became effective. In *Timberlake I*, we vacated Timberlake's sentence and remanded for a full resentencing to address issues unrelated to guilt. We otherwise affirmed

8.

Timberlake's judgment. According to the People, the trial court only had jurisdiction to resentence Timberlake within the confines of the remittitur when this matter was remanded, and no further litigation of guilt was permitted. That is to say, part of Timberlake's judgment—the part relating to his guilt—became final when the *Timberlake I* opinion became final in 2018. In contrast, Timberlake contends he is entitled to the ameliorative benefits of AB 333 because his criminal matter is not yet final. We agree Timberlake is entitled to the retroactive benefits of AB 333.

A panel of this court recently decided *People v. Mitchell* (2023) 97 Cal.App.5th 1127, review granted February 21, 2024, S283474 (*Mitchell*).) That case presented essentially the same situation and question presented here, and it instructs that AB 333 applies to Timberlake's case. In *Mitchell*, the defendant was convicted in 2017 of multiple felonies, including being an active gang member. (*Mitchell*, at p. 1129.) Numerous gang enhancements were also found true. (*Ibid.*) The defendant successfully appealed, and his case was remanded for resentencing. (*Id.* at pp. 1129–1130.) In 2022, following this court's issuance of the remittitur, but prior to resentencing, AB 333 took effect, changing the elements necessary to establish a criminal street gang. (*Id.* at p. 1130.) Although it acknowledged AB 333's retroactivity, the resentencing court found that it lacked jurisdiction to address the validity of the defendant's gang conviction and the gang enhancements, which would exceed the scope of the remittitur. (*Id.* at pp. 1130, 1137.)

The *Mitchell* defendant appealed, arguing he was entitled to the retroactive benefits of AB 333. (*Mitchell, supra,* 97 Cal.App.5th at pp. 1136–1137.) The People argued that the defendant's judgment became final as to his guilt when the opinion in his first appeal became final in 2021. (*Id.* at p. 1137.) The *Mitchell* panel rejected the People's assertion that the issue of the defendant's guilt was final even though the validity of his sentence was still being adjudicated. (*Id.* at pp. 1140–1141.) The panel explained, citing the California Supreme Court, that "[a] judgment and sentence are

9.

generally considered synonymous, and there is no judgment of conviction without a sentence." (*Id.* at pp. 1138, 1139, citing *People v. McKenzie* (2020) 9 Cal.5th 40, 46.) Thus, "[t]he cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to a final judgment." (*Id.* at p. 1139.) The panel observed that the defendant was still waiting to be resentenced when AB 333 took effect. (*Id.* at p. 1140.) Thus, the defendant's judgment never became final before AB 333's enactment, and therefore he was entitled to its benefits. (*Id.* at pp. 1140–1141.)

Similarly here, AB 333 took effect while Timberlake was waiting for this court's decision in *Timberlake II*. Since his judgment was not final when AB 333 was enacted, Timberlake was entitled to its benefits under *Mitchell*'s reasoning.

### D. Analysis

The People concede that if AB 333 applies retroactively, it is appropriate to reverse the gang enhancement allegation finding attached to count 2 and the gang participation conviction (count 4). This is because the evidence presented at trial did not properly prove any predicate offenses in order to prove the gang offense and enhancement. (§§ 186.22, subds. (a) & (b), 25850, subd. (c)(3).) We accept the concession.

At trial, on top of the charged crimes, the prosecution's gang expert testified about three other cases involving the commission of predicate offenses by members of the Country Boy Crips gang: a 2007 drive-by shooting resulting in murder convictions of three members of the gang, a 2013 shooting of a rival gang member resulting in murder convictions of two other members of the gang, and a 2013 drive-by shooting resulting in the conviction of multiple members of the gang. (*Timberlake I, supra,* 2018 WL 4002008, at p. 7.) In *Timberlake I*, we concluded no admissible evidence supported findings that the perpetrators of the two murders were Country Boy Crips members. (*Timberlake I*, at p. 7.) But we found that admissible evidence proved that the persons who committed the 2013 drive-by shooting were Country Boy Crips members. (*Id.* at

10.

p. 8.) However, as the People observe, there was no evidence presented at trial that the 2013 drive-by shooting commonly benefitted the gang in a way that was more than reputational. Thus, the 2013 drive-by shooting, without additional evidence, cannot be a predicate offense under revised section 186.22. (§ 186.22, subd. (e).)

The only other possible predicate offenses the jury may have relied on were the charged offenses. Indeed, the jury was instructed that the charged offenses could be used to establish predicate offenses for section 186.22 purposes. But under amended section 186.22, the charged offenses can no longer be used to establish predicate offenses to prove a pattern of criminal gang activity. (§ 186.22, subd. (e)(2).)

Accordingly, the evidence was insufficient to support the heightened evidentiary requirements set forth by amended section 186.22 following AB 333's enactment. Thus, the gang enhancement applied to count 2 and the gang participation count, count 4, must be reversed. However, the People are not foreclosed from retrying Timberlake on either the gang enhancement allegation or the gang participation count upon remand under the new requirements of amended section 186.22. Put differently, " '[b]ecause we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial.' " (*Sek, supra,* 74 Cal.App.5th at p. 669; accord, *People v. Figueroa* (1993) 20 Cal.App.4th 65, 72 ["Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence"]; see *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand"].)

In light of this conclusion, we need not address Timberlake's third claim for relief, which is that the gang enhancement finding and the gang participation conviction must be reversed under *Valencia, supra,* 11 Cal.5th 818.

## II.     Murder conviction

Timberlake also contends his second degree murder conviction must be reversed because of revised section 186.22.  Now, "to benefit, promote, further, or assist" throughout section 186.22 means "to provide a common benefit to members of a gang where the common benefit is more than reputational."  (§ 186.22, subd. (g).)  Timberlake interprets this amendment to mean that evidence of the reputational benefit of a charged offense is inadmissible for any purpose, not even to prove motive.  He observes that the prosecution's gang expert testified about the reputational benefit to gangs and their members of committing violent crimes.  The expert testified that a gang member committing an act of violence against another gang would bolster that member's reputation and status within his gang and would bolster his gang's overall reputation.  Timberlake also observes that the jury was instructed that it could consider evidence of gang activity in deciding whether he had a motive to commit the charged offenses.

We reject Timberlake's argument because revised section 186.22 does not ban evidence of the reputational benefit of a charged offense.  Section 186.22 now provides that the reputational benefit of a crime cannot prove a gang enhancement allegation (§ 186.22, subd. (b)) or the crime of gang participation (§ 186.22, subd. (a)).  That is to say, a crime's reputational benefit cannot prove that the crime was committed "to benefit, promote, further, or assist" a criminal street gang.  But this does not mean that revised section 186.22 bars the admission of evidence that a crime was committed to bolster one's reputation within a gang or bolster the reputation of the gang itself, if this evidence is offered to prove motive.  Indeed, " '[g]ang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related.' "  (*People v. Memory* (2010) 182 Cal.App.4th 835, 858.)  Also, "[w]hile motive is not an element the prosecution must prove, ' "[p]roof of the presence of motive is material as evidence tending to refute or support the presumption of innocence." ' "  (*People v. Casillas*

(2021) 65 Cal.App.5th 135, 150; see also *People v. Perry* (2019) 36 Cal.App.5th 444, 473.)

Timberlake does not dispute that the People were allowed to present evidence of his motive to shoot the victim, McGee. Rather, he complains that evidence of the reputational benefit of the murder was used to prove motive. To that point, he argues that evidence of the reputational benefit of the murder is prohibited under revised section 186.22 and that the admission of this evidence was prejudicial. We disagree because, as we have explained, evidence of reputational benefit of a charged crime is admissible for that purpose under revised section 186.22.

Timberlake has not shown a basis for reversing his murder conviction.[2]

## III. Ineffective assistance of counsel

Timberlake contends the trial court erred by admitting into evidence over defense counsel's objection two rap music videos featuring Timberlake. The court admitted the two videos and copies of the written-out lyrics as exhibits.

In his direct appeal, Timberlake's appointed counsel did not raise any issue about the videos or lyrics. Now, Timberlake claims his appellate counsel was ineffective for not raising any issue about that evidence. He argues the admission of the evidence denied him due process and a fair trial. We reject his claim of ineffective assistance of appellate counsel as untimely.

We will reproduce the timeliness framework for claims in habeas petitions. "A criminal defendant mounting a collateral attack on a final judgment of conviction must do so in a timely manner. [Citation.] Thus, a petitioner is required to explain and justify any significant delay in seeking habeas corpus relief. [Citation.] An unjustified delay in

---

[2] The People contend this claim was also untimely. Like Timberlake's first claim, this claim also emanates from AB 333's enactment. Since we found the first claim was not untimely, we likewise find this claim is not untimely.

presenting a claim bars consideration of the merits." (*Sims, supra,* 27 Cal.App.5th at p. 204.)

"[T]he *petitioner* has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness. [¶] Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. A petitioner must allege, *with specificity*, facts showing when information offered in support of the claim was obtained, and that the information neither was known, nor reasonably should have been known, at any earlier time." (*Robbins, supra,* 18 Cal.4th at p. 780.)

Here, the petition contains no such allegations about his ineffective assistance of appellate counsel claim. We find there was substantial delay in bringing this claim for which there appears to be no good cause and no applicable exception to the untimeliness bar. Timberlake was represented by counsel in *Timberlake I*, and his counsel filed the opening brief in that appeal on December 1, 2016. The brief did not raise any issue about the videos and lyrics, and Timberlake was served with a copy of this brief. Counsel also filed the reply brief on May 8, 2017, and filed a petition for rehearing on July 30, 2018, neither of which raised any issue with the videos and lyrics. Rehearing was granted. Timberlake received copies of the reply brief and the rehearing petition as well. He should have become aware that no issue was raised about the videos and lyrics when he received these filings, and he alleges nothing to the contrary.

Further, this court issued its opinion in *Timberlake I* after rehearing on August 22, 2018. The California Supreme Court denied Timberlake's petition for review and the remittitur issued on November 1, 2018. If the filings served on him did not make him aware that no issue was raised about the videos and lyrics, then the *Timberlake I* opinion should have.

14.

In any event, Timberlake did not file the instant petition until January 2023, more than six years after he was served with the opening brief in *Timberlake I*, and more than four years after we filed the *Timberlake I* opinion. We conclude there was a substantial delay in bringing any claim about the videos and lyrics. Timberlake does not allege any good cause for the delay, and we find none. He also does not claim any exception to the untimeliness bar applies, and our review does not show that any applies. We thus reject the claim as untimely.

## DISPOSITION

Relief is granted as to petitioner's first claim for relief only. Accordingly, the gang enhancement finding attached to count 2 and the gang participation conviction on count 4 are reversed. The matter is remanded to the trial court, and the prosecution may retry Timberlake on the gang enhancement allegation and the gang participation count. The rest of Timberlake's claims for relief are denied.

SNAUFFER, J.

WE CONCUR:

PEÑA, Acting P. J.

SMITH, J.

15.