Filed 8/26/20  P. v. Olson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300206 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA018677) |
| v. | |
| ERICA DAWN OLSON | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendant Erica Dawn Olson appeals from the trial court's summary denial of her Penal Code section 1170.95 petition for resentencing.[1] The trial court determined that Olson was ineligible for resentencing as a matter of law because she was a major participant in a burglary and robbery who acted with reckless indifference to human life. Olson contends she made a prima facie showing that she was entitled to relief, and the trial court's ruling improperly relied upon the jury's special circumstance finding made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), a prior habeas denial, and the statement of facts from our 1997 opinion, *People v. Olson* (May 30, 1997, B099988) [nonpub. opn.] (*Olson*). Consistent with this court's recent opinion in *People v. Galvan* (Aug. 4, 2020, B300323) ___ Cal.App.5th ___ [2020 WL 4462175] (*Galvan*), we conclude that because Olson could still be convicted of murder under the new felony murder rule, she is ineligible for section 1170.95 relief as a matter of law. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Olson Is Convicted of Felony Murder**

We quote a portion of the facts from our unpublished opinion, *Olson, supra*, B099988: "[Terri Lynne] West lived . . . with her infant daughter, Carlie, and with 12-year-old Ashley, whom West was adopting. Olson was a friend of West's and had lived with West for approximately two months; she had a key to the apartment. [Robert] Foster, who was Olson's boyfriend, had spent the night at the apartment with Olson on more than one occasion. At some point, West and Foster had a

---

[1] All unspecified statutory references are to the Penal Code.

2

disagreement . . . .  West and Olson then had a disagreement.
Olson moved out of the apartment" and moved in with Foster at
the YMCA.  (*Olson, supra*, B099988.)

"In early February 1994, Thomas Sembower (Sembower)
met Foster, Olson and [Marcus Terral] Brewington . . . .  Foster
asked Sembower to help . . . burglarize a place he and Olson
knew. . . .  The other participants would be Foster, Olson,
Brewington, and [Linnette O'Neal] Blocker.  Olson and Blocker
would restrain the children.  Sembower's role would be to help
restrain the boyfriend.  Foster explained he did not like the
woman whose apartment they were going to burglarize . . . .
They were going to use a taser on the occupants of the apartment
while they were asleep; Foster also said he would use a knife
from the kitchen."  (*Olson, supra*, B099988.)  They also discussed
items they would take from West's apartment.

"On February 8, 1994, Sembower met Foster and the others
at the YMCA to discuss the matter further.  Foster took
Sembower aside; he said he had changed plans.  Rather than
restraining the burglary victims, they would kill them.
Sembower refused to participate under these circumstances . . . ."
(*Olson, supra*, B099988.)

"[That night,] Foster, Olson, Brewington and Blocker had
taken a bus to West's apartment, arriving at approximately
11:00 p.m.  They waited in a nearby park for approximately one
hour until West and the children returned home.  As they waited,
Foster, Olson, and Brewington discussed entering West's
apartment to steal her belongings and then killing the family.
Foster, who had a butcher knife, said he would break West's
neck.  Brewington said he would 'take care of the baby.' "  (*Olson,
supra*, B099988.)

3

"Shortly after they saw West drive up . . . and enter the apartment, the quartet left the park and went to the apartment. Foster used Olson's key to open the door. As the others entered the apartment, Foster went to West's bedroom. He attacked her with the knife, inflicting a number of stab wounds. She also was struck forcefully 15 to 20 times. She ultimately died from strangulation." (*Olson, supra*, B099988.)

"Olson and Foster were interviewed at the El Segundo police station. Olson told [the] police that Foster had a drawing of the interior of West's apartment and each of them had a job to do. The original plan was to enter the apartment, break the necks of the occupants, [and] remove West's money and valuables . . . ." (*Olson, supra*, B099988.)

"Foster testified in his own defense. . . . [¶] Foster planned to kill West because of the way she had attempted to turn Olson against him. . . . He planned to take West's property as a coverup, to make it look like a burglary had taken place. . . . [¶] Just after midnight on February 9, 1994, Foster was at a park near West's apartment with Olson, Brewington and Blocker. After West returned home, they waited about 30 minutes for her to go to sleep." (*Olson, supra*, B099988.)

Foster entered West's bedroom. "He stood over the bed for about five seconds, then West awoke and asked who he was and what he wanted. He pulled back his scarf; West recognized him and tried to move away from him. She kept asking what he wanted, her voice getting louder each time, until finally she was screaming." (*Olson, supra*, B099988.) Foster stabbed her, choked her, and cut her neck.

"Foster heard scuffling sounds from Ashley's room; she was crying and calling for her mother. Brewington came to him and

4

said that a police vehicle had pulled up by the apartment building.  A couple of minutes later, he reported the police were still there and Olson was starting to panic." (*Olson, supra*, B099988.)

"Foster was not telling the truth when he told [the] police . . . the incident was a result of a burglary gone bad.  His sole intent was to kill West." (*Olson, supra*, B099988.)

A jury convicted Olson of first degree murder and found true the special circumstance allegation—to wit, that while Olson was not the actual killer, she with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of a residential burglary and residential robbery that resulted in West's death.  (See § 190.2, subd. (d).)  Olson was also convicted of burglary and two counts of robbery.  As to the murder, Olson was sentenced to life imprisonment without the possibility of parole.  We affirmed the judgment against Olson. (See *Olson, supra*, B099988.)

## B.    The Trial Court Denies Olson's Petition for Writ of Habeas Corpus

In *Banks, supra*, 61 Cal.4th 788, the California Supreme Court clarified under what circumstances a defendant could be deemed a major participant in an underlying felony who acted with reckless indifference to human life.  Thereafter, Olson filed a petition for writ of habeas corpus in the trial court.[2]  She argued

***

[2] Notwithstanding Olson's efforts to obtain the pleadings or the trial court's order relating to the habeas petition, these documents were not included in the record on appeal.  We obtained a copy of Olson's appellate habeas petition, which

that under *Banks*, the evidence at trial was insufficient to establish she was a major participant in the underlying felonies who acted with reckless indifference to human life.

Upon reviewing the parties' briefs, the trial court determined an evidentiary hearing was not necessary. In a written order, the trial court considered the *Banks* factors and denied the petition. On December 22, 2016, this court denied Olson's petition for writ of habeas corpus.

## C. The Trial Court Denies Olson's Section 1170.95 Petition

In 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e).) Senate Bill No. 1437 also enacted section 1170.95, which permitted persons who would no longer be guilty of murder under the new law to petition the trial court for resentencing. (§ 1170.95, subd. (a).)

On May 10, 2019, Olson filed a section 1170.95 petition for resentencing relief. In her petition, Olson quoted the statement of facts from our 1997 appellate opinion in its entirety. She then argued that "proper application of the new law to her case would mean that she could not be convicted of murder under the newly

---

attached the traverse and the trial court's October 28, 2016 written order and minute order denying Olson's habeas petition.

amended sections 188 or 189.  This is because of the clarification of the applicable special circumstance provided by the court in *Banks* . . . reveals that there was insufficient evidence to support the jury finding that the special circumstance alleged in her case was true."

To her petition, Olson attached her declaration, a copy of the 1997 appellate opinion, and a 1997 declaration of Robert Foster.  Among other things, Olson averred that "[i[f granted a hearing, I will be able to present additional facts and evidence in light of the clarification provided by the Supreme Court in [*Banks* and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)]."  In his declaration, Foster claimed that on the night of the murder, the quartet went to West's house to get back some of Olson's clothing.  When they arrived at West's apartment, a mutual friend was there with West.  Foster contends this mutual friend killed West.

On May 24, 2019, the trial court denied Olson's section 1170.95 petition.  The court found that "[t]he facts of the case [from the 1997 appellate opinion], the jury finding as to the special circumstance allegation and the trial court's previous ruling on Habeas regarding the special circumstance allegation, supports the conclusion that [Olson] intended to kill, aid, abet, or assist the actual killer or killers in the commission of murder in the first degree, and or, was a major participant in the murder and acted with reckless indifference to human life during the course of the murder."  (Fn. omitted.)  Thus, "[Olson's] murder conviction meets the requirements of the new provisions of

[section] 189[, subdivision ](e). [¶] [Olson] is not entitled to relief under section 1170.95 as a matter of law."[3]

Olson timely appealed.

## DISCUSSION

Under section 1170.95, subdivision (a), a person convicted of felony murder may petition the trial court for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) *The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.*" (Italics added.)

If a petitioner demonstrates a prima facie showing of eligibility under subdivision (a) of section 1170.95, the trial court must then appoint counsel and order briefing. (*Id.*, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 332, review granted Mar. 18, 2020, S260493 [concluding under subd. (c) of § 1170.95, petitioner must demonstrate two prima facie showings]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598 [holding § 1170.95, subd. (c), does not require

---

[3] In its order, the trial court found that Olson "has not alleged facts establishing an exception to the rule barring reconsideration of [habeas] claims previously rejected."

appointment of counsel "until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute"].)  If the petitioner makes a second prima facie showing that she is entitled to relief, the trial court must issue an order to show cause why resentencing relief should not be granted. (§ 1170.95, subd. (c); *Verdugo, supra*, at pp. 328-329.)  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ."  (§ 1170.95, subd. (d)(3).)

Olson argues the trial court's summary denial of her section 1170.95 petition was erroneous in several respects.  Olson contends her petition established a prima facie showing that she was entitled to relief, and therefore under the statute, the court should have proceeded to a full evidentiary hearing at which the prosecution bore the burden to prove the special circumstance. Citing *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 and *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835, Olson argues that the trial court could not rely on the jury's pre-*Banks* special circumstance finding to summarily deny her petition. Olson also argues the trial court erred in relying upon her prior habeas denial and, on the basis such statements are hearsay, the statement of facts from our 1997 opinion.  Olson also argues section 1170.95 required the trial court to appoint counsel for Olson upon receipt of the petition.

As discussed in *Galvan, supra*, ___ Cal.App.5th at p. ___ [2020 WL 4462175 at p. *1], we construe section 1170.95 differently than *People v. Torres*, *supra*, 46 Cal.App.5th 1168 and *People v. Smith*, *supra*, 49 Cal.App.5th 85.  Olson cannot

9

demonstrate the initial prima facie showing required under section 1170.95, subdivision (a)(3), that she now *could not* be convicted of first or second degree murder because of the changes to section 188 or 189.  A defendant may still be convicted of felony murder under amended section 189, subdivision (e), if she was a major participant who acted with reckless indifference to human life.  (See § 189, subd. (e).)  Thus, Olson's petition does not depend on Senate Bill No. 1437's changes to the felony murder doctrine.  Rather, as in *Galvan*, her petition depends on "the clarification of the requirements for a special circumstance finding in *Banks* and *Clark*."  (*Galvan*, *supra*, at p. ___ [2020 WL 4462175 at p. *4].)  The proper vehicle for such a challenge is a petition for writ of habeas corpus.  (*People v. Gomez* (2020) 52 Cal.App.5th 1, 17; accord, *Galvan*, *supra*, at p. ___ [2020 WL 4462175 at p. *4].)

Accordingly, Olson's arguments relating to the trial court's reliance on the jury's special circumstance finding, prior habeas denial, and appellate opinion's statement of facts are moot.  Olson challenges the trial court's adoption of the conclusion in the jury's finding and habeas denial that she was a major participant who acted with reckless indifference to human life.  Further, she challenges the trial court's use of the statement of facts from our 1997 appellate opinion as a source of evidence for this determination.

We need not decide whether such use of these records was permissible.  The trial court needed to review the petition or record of conviction only insofar as necessary to identify the undisputed fact that because there was a pre-*Banks* jury finding that the alleged special circumstance was true and no subsequent finding that the special circumstance was false, Olson could not establish that she "could not" be convicted of first or second

degree murder under Senate Bill No. 1437.[4] (See § 1170.95, subd. (d)(2) ["If there was a prior finding by a court or jury that the petitioner *did not* act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner" (italics added)].)

We are mindful that Olson previously filed a petition for writ of habeas corpus challenging the special circumstance finding under *Banks*. We do not have before us the question of whether a subsequent habeas petition on the same grounds should be considered on the merits by the trial court. A summary denial of a habeas petition is not law of the case or res judicata. (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6.) However, "[a] claim that is duplicative of a claim raised in a previous habeas petition is also subject to dismissal, absent a change in the facts or the law." (*In re Sims* (2018) 27 Cal.App.5th 195, 206, citing *In re Reno* (2012) 55 Cal.4th 428, 459-460; *In re Clark* (1993) 5 Cal.4th 750, 769-770.)

Finally, Olson argues the trial court erred in summarily denying her petition without first appointing counsel. However, the trial court need not appoint counsel until after a petitioner passes the first prima facie review stage. (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1140; accord, *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.) As discussed above, she did not.

---

[4] The trial court may rely upon readily ascertainable materials in the court file and record of conviction in making the threshold determination of eligibility. (*People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1138.)

## DISPOSITION

The May 24, 2019 order denying Olson's petition is affirmed.

NOT TO BE PUBLISHED

SINANIAN, J.[*]

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.